IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ZACHARY WHITEHEAD and BILLIE WHITEHEAD,<br><br>      Plaintiffs,<br><br>v.<br><br>OCWEN FINANCIAL CORP.;<br>OCWEN LOAN SERVICING, LLC,<br>and WELLS FARGO BANK, N.A.,<br><br>      Defendants. | Case No. 16-CV-536-GKF-FHM |

**OPINION AND ORDER**

Before the court is the Motion to Dismiss of defendant Ocwen Loan Servicing, LLC ("OLS") and defendant Wells Fargo Bank, N.A. ("Wells Fargo") [Doc. No. 32]. For the reasons set forth below, the motion is granted in part and denied in part.

**I. Procedural Background & Allegations**

This dispute arises from a foreclosure on a home owned by Zachary and Billie Whitehead (the "Whiteheads"). Specifically, in December 2009, the Whiteheads defaulted on a home loan issued by Wells Fargo. Under severe financial strain, the Whiteheads filed for bankruptcy. Instead of affirming the loan and curing default, the Whiteheads discharged their debt and abandoned the property. As a consequence, OLS—Wells Fargo's loan servicer and agent—was granted relief from the bankruptcy stay. OLS completed foreclosure proceedings, conducted a sheriff's sale, and on November 23, 2010, recorded a sheriff's deed transferring ownership of the Whiteheads' property to Wells Fargo. The Whiteheads allege that no motion for deficiency judgment was filed pursuant to 12 O.S. § 686, and any remaining obligations the Whiteheads may have had under the note and mortgage were extinguished by operation of law. So things stood in 2010.

1

Over four years later OLS, on behalf of Wells Fargo, applied to the District Court for McIntosh County, Oklahoma to vacate the foreclosure judgment, the Sheriff's Sale, and the Order Confirming Sale. Wells Fargo also requested that the Sheriff's Deed recorded four years earlier be voided. On its face, Wells Fargo's application was filed "in order to name and serve additional parties of interest." [Doc. No. 32-1]. The state court granted that request on December 4, 2014, and Wells Fargo subsequently amended its petition to name Sand Canyon Corporation—which possessed a recorded mortgage interest in the property—as a defendant. The state court entered default judgment against the Whiteheads on March 3, 2015. Following that judgment, the Whiteheads allege representatives from OLS and Ocwen Financial Corp. ("OFC") began calling them in an effort to collect over $140,000.00 in alleged debt. In response, the Whiteheads petitioned the court to vacate its December 4, 2014 order. *See* [Doc. No. 34-2, pp. 1–6]. That action terminated in an agreed order dated April 28, 2016, which restored the parties to "the same position they were in prior to the entry of the December 4, 2014 Order." [Doc. No. 34-3, p. 1].

On July 15, 2016, the Whiteheads filed the instant action in Tulsa County District Court, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Oklahoma Consumer Protection Act ("OCPA"), 15 O.S. § 751, *et seq.*, common law fraud, malicious prosecution, and abuse of process. [Doc. No. 1-1]. The case was removed to this court on August 15, 2016. [Doc. No. 1]. Defendants moved to dismiss the Whiteheads' claims on September 26, 2016, [Doc. Nos. 24-25] prompting the Whiteheads to file their Amended Complaint, [Doc. No. 28]. Defendants OLS and Wells Fargo now move to dismiss certain claims alleged in the Amended Complaint.

## II. Legal Standard

On a motion to dismiss, the court must determine whether the plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To that end, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out a claim. *Id.* at 556. The court views the complaint, and reasonable inferences therefrom, "in the light most favorable" to the plaintiff and resolves every possible doubt in her favor. *Big Cats of Serenity Springs, Inc.*, 843 F.3d 853, 858 (10th Cir. 2016); *Occidental Hoteles Mgmt., S.L. v. Hargrave Arts, LLC*, No. 09-CV-526-GKF-PJC, 2010 WL 1416718, at *1 (N.D. Okla. Apr. 6, 2010). However, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Twombly*, 550 U.S. at 555 (quotation marks omitted).

## III. Analysis

OLS and Wells Fargo move to dismiss the following claims: (1) TCPA; (2) fraud; (3) malicious prosecution; and (4) abuse of process. For the reasons set forth below, defendants' motion is granted in part and denied in part.

### A. The Telephone Consumer Protection Act Claim

The TCPA generally prohibits the use of "any automatic telephone dialing system"[1] ("ATDS") to contact cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A). Thus, to state a

---

[1] ATDS includes "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Such technology encompasses "predictive dialers," *In re*

TCPA claim, a plaintiff must allege: "(1) the defendant called a cellular telephone number; (2) using an automatic dialing system; (3) without the recipient's express prior consent." *Salmon v. CRST Expedited, Inc.*, No. 14-CV-265-CVE-TLW, 2014 WL 4656499, at *2 (N.D. Okla. Sept. 17, 2014) (quotation marks and citation omitted). The Whiteheads have done so here—specifically, they allege that OLS and OFC representatives contacted them between March and November 2015, [Doc. No. 28, p. 7, ¶¶ 21, 38, 41, 47]; collection calls were directed to the Whiteheads' cell phone, [*id.* ¶ 47]; an ATDS made the calls, [*id.* ¶¶ 48-49]; and that no consent was given, [*id.* at 8, ¶ 50]. That suffices to survive a motion to dismiss. *See Salmon*, 2014 WL 4656499, at *2; *Makowski v. First Nat'l Bank of Neb., Inc.*, No. 12-cv-02280-CMA-MEH, 2013 WL 754922, at *8 (D. Colo. Feb. 6, 2013) (adopting Report and Recommendation).

The caselaw cited by defendants is not to the contrary. In those cases, TCPA claimants provided *no* factual allegations establishing the use of ATDS technology. *See Johansen v. Vivant, Inc.*, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (holding "pleading the use of an ATDS, without providing any other supporting facts," flunks Rule 12(b)(6)); *Miller v. Cain*, No. 14-2613, 2015 WL 222434, at *9 (W.D. La. Jan. 14, 2015) (finding plaintiff did "[no] more than simply parrot the statutory language"); *Knutson v. Reply!, Inc.*, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011) ("[T]he complaint gives no details about the manner of the calls except that they were solicitations[.]"); *Flores v. Adir Int'l, LLC*, 2015 WL 4340020, at *4 (C.D. Cal. July 15, 2015) ("Plaintiff's TCPA claims rest solely on his conclusory allegation that Defendant used an ATDS[.]"). Here, by contrast, the Whiteheads allege that Ocwen registered Georgia-based

---

*Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14091 (2003), which are defined as "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers are called randomly or sequentially generated or come from calling lists," *In re Rules & Regs Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15392 n.5 (2012) (citation omitted).

Automatic Dial Announcing Devices ("ADAD") with the Public Utility Commission of Texas. [Doc. No. 28, p. 7, ¶ 49].

That passes muster under Rule 12(b)(6), *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (finding allegation of registration of ADAD device with Public Utility Commission of Texas sufficient), and distinguishes this case from cases where the facts alleged did not specify use of an ATDS. *Gragg v. Orange Cab Co., Inc.*, 2013 WL 195466, at *2 (W.D. Wash. Jan. 17, 2013) (noting lack of any specific allegations about ATDS technology in light of preexisting business relationship); *Oliver v. DirecTV, LLC*, 2015 WL No. 3:12-cv-02962, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (facts provided were as consistent with personal generation as ATDS generation).

B. Fraud

Fed. R. Civ. P. 9(b) requires fraud be pled "with particularity." That requires a plaintiff "set forth the 'who, what, when, where and how' of the alleged fraud." *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006); *Jensen v. America's Wholesale Lender*, 425 Fed. App'x 761, 763–64 (10th Cir. 2011). By their own admission, the Whiteheads recognize the "where" of the alleged fraud was "not pled clearly." [Doc. No. 34, p. 15]. But more problematically, the "who" of the alleged fraud was pled in gross. The Whiteheads "consistently lump[ ] the [d]efendants into an undifferentiated group and makes broad sweeping allegations against all" of them, without specifying individuals, their employment status, or a specific relationship to OLS, OFC, or Wells Fargo. *See Allain v. Wyeth Pharm., Inc.*, No. 2:14-cv-00280-KOB, 2015 WL 178038, at *3 (N.D. Ala. Jan. 14, 2015). And while fraudulent statements are attributed to an Ocwen representative, identifying him or her—"upon information and belief"—"as one of . . . thousands of . . . shared employees"

5

between OLS and OFC hardly qualifies as particular.  *See* [Doc. No. 34, p. 15].  In short, plaintiffs "maintain their broad accusations against defendants collectively[.]"  *See Jensen*, 425 Fed. App'x at 763.  While discovery might identify the particulars of the fraud at issue, "our pleading standard does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *See id.* (internal quotation marks and citation omitted).  Such an approach simply fails "the heightened pleading requirements of Rule 9."  *Allain*, 2015 WL 178038, at *3.  Accordingly, the Whiteheads' fraud claim is dismissed without prejudice.

### C. Malicious Prosecution

To state a claim for malicious prosecution, a plaintiff must show: "'(1) the bringing of the original action by the defendant; (2) its successful termination in plaintiff's favor; (3) want of probable cause to join the plaintiff; (4) malice; and (5) damages.'"  *See Bivins v. Okla.*, No. 13-CV-0802-CVE-PJC, 2014 WL 1976463, at *3 (N.D. Okla. May 15, 2014) (quoting *Young v. First State Bank*, 628 P.2d 707, 709 (Okla. 1981)).  Such actions are "disfavored by Oklahoma courts, and the elements of the action are narrowly construed."  *See Meyers v. Ideal Basic Indus., Inc.*, 940 F.2d 1379, 1383 (10th Cir. 1991).

Defendants argue that a motion to vacate judgment does not "initiate" a legal action for purposes of a malicious prosecution claim.  That argument lacks merit.  12 O.S. § 1033 provides that—after 30 days—any effort to vacate a judgment must be made by petition and summons "as in the commencement of a civil action."  That effort—whether made by motion or petition—"is in the nature of an independent action," *see Grayson v. Stith*, 72 P.2d 820, 822 (Okla. 1937); *accord Zipperle v. Smith*, 304 P.2d 310, 313 (Okla. 1956); *Amoskeag Sav. Bank v. Eppler*, 77 P.2d 1158, 1161 (Okla. 1938) ("Statutory proceedings for vacating judgments are in the nature of independent actions."), and, in fact, is described as a "[t]rial of application to vacate."  *See* 12

O.S. § 1034; *see also* 12 O.S. § 2003 ("A civil action is commenced by filing a petition with the court."). Accordingly, defendants' December 4, 2014, Application to Vacate Journal Entry initiated legal action for tort purposes. [Doc. 32-1].

That action ultimately terminated in the Whiteheads favor. By order dated April 28, 2016, the parties were restored to "the same position they were in prior to the entry of the December 4, 2014 Order." [Doc. No. 34-3, p. 1]. Put simply, the December 4, 2014 order was declared a legal nullity. Defendants reply that the April 28, 2016 agreed order terminated a *different* proceeding—namely, the Whiteheads separate petition to vacate the court's December 4, 2014 order. That elevates form over substance. Defendants cite no caselaw that suggests an action cannot terminate in a party's favor by order in a vacatur action. And that is unsurprising—a contrary rule allows defendants to opportunistically benefit from a plaintiff's success on a petition to vacate.

Finally, defendants argue the malicious prosecution claim is barred by compromise. Oklahoma courts "ha[ve] consistently recognized . . . that where a termination of a prosecution is pursuant to a compromise or settlement, a later action for malicious prosecution is barred." *See Meyers v. Kruger*, 759 F. Supp. 770, 772 (E.D. Okla. 1990). That doctrine speaks to an action's termination in a party's favor—generally, "[a] suit that has been dismissed by reason of compromise or by a settlement cannot be said to be a bona fide termination nor a legal termination in favor of either party." *See First State Bank v. Denton*, 198 P. 874, 876 (Okla. 1921). Here, in contrast, the April 28, 2016, agreed order *did* terminate the operative legal effect of the court's December 4, 2014 order in the Whiteheads' favor. *See* [Doc. No. 34-3, p. 1]. Of course, no person should "consent to a termination and then take advantage of it." *See Young v. First State Bank*, 628 P.2d 707, 710 (Okla. 1981). But the Whiteheads did not. The April 28,

7

2016 order confirms the essence of the malicious prosecution claim brought today—namely, that defendants' 2014 vacatur action was pursued without probable cause. Indeed, there appears to have been no legal basis for the state court's December 4, 2014 order, since defendants' application to vacate well exceeded the three year statute of limitations on such actions. *See* 12 O.S. § 1038; *Murie v. Harting*, 324 P.3d 1269, 1273 (Okla. Civ. App. 2014). Accordingly, the court declines to dismiss the Whiteheads' malicious prosecution claim.

### D. Abuse of Process

To state a claim for abuse of process, a claimant must allege: "(1) the improper use of the court's process (2) *primarily* for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse." *See Williams v. Ocwen Loan Servicing, LLC*, 2012 WL 5334754, at *2 (N.D. Okla. Oct. 26, 2012) (quoting *Greenberg v. Wolfberg*, 890 P.2d 895, 905 (Okla. 1995) (emphasis in original)). "'The quintessence of abuse of process is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends.'" *See Williams*, 2012 WL 5334754, at *2 (quoting *Greenberg*, 890 P.2d at 905 (emphasis omitted)).

The Whiteheads state a valid claim here. "Abuse of process occurs when legal process is used . . . to accomplish an end not lawfully obtainable, or to compel someone to do some collateral thing he could not be legally compelled to do." *See Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 116 (10th Cir. 1983). As alleged, defendants vacated the 2010 foreclosure judgment in order to revive a previously discharged debt. In other words, the Amended Complaint argues that defendants employed legal process—a vacatur action—to compel the Whiteheads to do something they were under no legal obligation to do—repay an extinguished

debt. [Doc. No. 28, p. 6, ¶ 39]. Accordingly, the Whiteheads' abuse of process claim survives Rule 12(b)(6).

WHEREFORE, defendants' Motion to Dismiss of defendants Ocwen Loan Servicing, LLC and Wells Fargo Bank, N.A. [Doc. No. 32] is granted in part and denied in part.

IT IS SO ORDERED this 6th day of February, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT